FREEDMAN et al. v. OPPENHEIM.

(Supreme Court, Appellate Division, Second Department.   March 17, 1905.)

ADVERSE POSSESSION—EVIDENCE—MARKETABLE TITLE.

> On an issue as to adverse possession, a witness testified that his father did not live on the land, but walked over it once, commenced to clear off the underbrush, and fixed the fences; and another witness stated that he knew the father "went on and took possession." There was no proof that at the time of such acts the owner of the record title was living and of sound mind, or that his heirs or devisees were at such times under no legal disability. Held, that no adverse possession sufficient to show a marketable title was established.

Action by Betsie Freedman and another against William Oppenheim. From a judgment directing the specific performance by the defendant of a contract for the exchange of real property, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

George Edwin Joseph, for appellant.
Hugo Hirsh, for respondents.

PER CURIAM. Upon the proof offered on the first trial of this action, the title to the property which the plaintiffs undertook to convey to the defendant was declared by this court to be such as a purchaser should not be compelled to accept. Freedman v. Oppenheim, 80 App. Div. 487, 81 N. Y. Supp. 110. Upon the second trial, which now comes up for review, the plaintiffs attempted to strengthen their proof of adverse possession in accordance with the suggestion of the

presiding justice in his opinion upon the first appeal. The additional proof submitted for this purpose does not seem to us sufficient to warrant a judicial decree for specific performance. It does not really establish anything more than was established upon the first trial. The alleged adverse possession must have begun about May 4, 1866, when Isaac F. Tyson received a deed of the property from Maria Nesmith and Thomas Nesmith, her husband. His son, Robert F. Tyson, testifies that his father did not live on the property, but that he walked over it, and at one time commenced to clear off the undergrowth there; that there was no house on the premises, but only the destroyed foundation of a house; that he did not put up any fences, the fences being already there, but that he fixed the fences at various times after he purchased the premises; and that he cut wood and cut underbrush. None of these facts are inconsistent with possession under the party holding the record title. Nor does the testimony of Mr. Augustus Prentice, to the effect that he knew that Mr. Tyson, after he purchased the property, went on and took possession of it, add anything to the strength of the plaintiffs' case. It is merely the statement of a conclusion, without the specification of any of the facts upon which that conclusion is founded, save that Mr. Tyson went there frequently to examine the place, talked about having it divided up into lots, and cut brush thereon, which he had burned. Furthermore, it is to be observed that there is no proof in the case that, at the time when Isaac Tyson did any of the acts to which reference has been made, the owner of the record title was living and of sound mind, or that his heirs or devisees were at such times under no legal disability. Under all the circumstances, the plaintiffs have not negatived the possibility of an outstanding claim to the land by the heirs of the last holder of the record title, and this fact forbids the court from compelling a purchaser to accept a title founded alone on adverse possession.

The judgment should therefore be reversed.

Judgment reversed, and new trial granted, with costs to abide the final award of costs; HOOKER, J., not voting.